UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDY EVARISTO GARMENDIA RUIZ, Petitioner, v. MARKWAYNE MULLIN, Secretary of the United States Department of Homeland Security, et al., Respondents. | Case No.: 26-CV-3996 JAO (GC) **ORDER GRANTING IN PART WRIT OF HABEAS CORPUS** (ECF No. 1) |

Before the Court is Petitioner Freddy Evaristo Garmendia Ruiz's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1). Also before the Court is Respondents, Markwayne Mullin's (Secretary of the Department of Homeland Security), David Venturella's (Acting Director of ICE), Todd Blanche's (Acting Attorney General of the United States), and Jeremy Casey's (Warden of Imperial Regional Detention Facility) (collectively, "Respondents" or the "Government") Return to the Petition (ECF No. 4).

For the reasons set forth below, the Court **GRANTS IN PART** the Petition on due process grounds.

## BACKGROUND

Petitioner is a Nicaraguan citizen who fled persecution by the Sandinista dictatorship and entered the United States on January 11, 2022 to seek asylum. ECF No. 1 ¶¶ 2, 4. At that time he was subject to the "Migrant Protection Protocol" or "MPP," which required him to remain in Mexico while waiting for an Immigration Court date. *See id.* ¶ 5. He underwent a credible fear interview and was found to have a credible fear of being persecuted or tortured if he returned to Nicaragua. *See id.* ¶ 8. Immigration officials thereafter necessarily determined that he was neither a flight risk or danger to the community and paroled him into the United States of April 14, 2022 to continue pursuing his asylum claim. *See id.* ¶ 8.

On December 9, 2025, Petitioner was driving to work when ICE stopped him at a highway checkpoint, detained him, and took him to Imperial Regional Detention Facility, where he has remained since. *See id.* ¶¶ 15–16. He received no notice or pre-detention hearing before being detained. *See id.* ¶¶ 14, 21. The Government issued him a Notice to Appear charging him as removable, *see id.* ¶ 17, and an Immigration Judge summarily denied his asylum claim on March 2, 2026, *see id.* ¶ 18. Petitioner appealed the denial, which remains pending before the Board of Immigration Appeals, meaning there is no final order of removal against Petitioner. *See id.* ¶ 18.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court.

*Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

**DISCUSSION**

Petitioner argues that the summary revocation of his release from his 2022 detention without notice or a hearing violates the Due Process Clause. ECF No. 1 ¶¶ 72–81.[1] Respondents maintain that "Petitioner is subject to mandatory detention under § 1225(b)(2)," but "acknowledge[] that this Court, and Courts in this District, have repeatedly reached the opposite conclusion under the same and/or similar facts." *See* ECF No. 4 at 2. Thus, they "do[] not oppose the petition." *See id.* at 3. The Court concludes that Petitioner's current detention violates the Due Process Clause.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the

[1] Because the Court finds that Respondents violated Petitioner's rights to Due Process and orders his immediate release, it need not address his other grounds for relief.

. . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Petitioner has been out of custody since 2022, when the government implicitly determined he was not a danger to the community or a flight risk and paroled him into the country. *See* ECF No. 1 ¶ 8. Since his parole, Petitioner has complied with the law and conditions of his parole. *See id.* ¶ 20. Petitioner thus has a protected liberty interest continuing to remain out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after [his] initial apprehension reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) (finding the petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Mathews* factors. *See Mathews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the

> fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a determination that the Government's re-detention of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release in 2022. Petitioner has been cut off from his community in the United States, including his sister and many friends. *See* ECF No. 1 ¶ 23. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see also Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Respondents revoked Petitioner's release from custody without providing Petitioner with notification, reasoning, or a hearing. *See id.* ¶¶ 14, 21. Since the government's initial determination in 2022 that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Indeed, after his release from custody, Petitioner has apparently complied with all conditions of release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]" *Saravia*, 280 F. Supp. 3d at 1176. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an

erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Alvarenga Matute*, 807 F. Supp. 3d at 1130; *Pinchi*, 792 F. Supp. 3d at 1036; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Monroy Martinez v. Lyons*, 2026 WL 1047937, at * 5 (S.D. Cal. Apr. 17, 2026) (granting a writ of habeas corpus on due process grounds where the petitioner's release on bond was revoked); *Navarro Sanchez v. LaRose*, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).

**CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release on bond and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1038. The

Parties are **ORDERED** to file a Joint Status Report by August 12, 2026, confirming that Petitioner has been released.[2]

**IT IS SO ORDERED.**

Dated: July 29, 2026

Jill A. Otake
United States District Judge

---

[2] Petitioner requested attorney's fees, related expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* ECF No. 1 at 41. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order. *See* 28 U.S.C. § 2412(d)(1)(B).